UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                   Case No. 1:20-cr-29-04

v.

                                   Hon. Hala Y. Jarbou

JENNIFER LYNNE DAVIS,

     Defendant.

_____/

## OPINION

Defendant Jennifer Davis is an inmate at a federal prison in West Virginia. She filed a motion under 28 U.S.C. § 2255 to vacate her May 2021 sentence, arguing an improper calculation of her sentencing guideline range and ineffective assistance of counsel (Def's Mot. to Vacate, ECF No. 224). For the following reasons, the Court will deny Davis's motion.

## I. BACKGROUND

On January 11, 2021, Davis pled guilty to Distribution of Fentanyl Resulting in Death for her role in a drug-dealing operation in Kalamazoo. According to the record, Davis and three co-defendants were involved in a conspiracy to sell heroin and fentanyl. Starting in December 2019, Davis began dealing heroin on behalf of her co-defendant and boyfriend, Keegan Dunigan. At that time, they were also living together at her residence in Battle Creek. (Presentencing Investigation Report ("PSR") ¶ 27, ECF No. 155.) According to a police informant, the informant purchased small quantities of heroin from Davis on at least ten separate occasions over the course of several weeks. (*Id.*) The deals were arranged by Dunigan, but the drugs were actually delivered by Davis. (*Id.*) In January 2020, Dunigan moved out of Davis's residence and began staying with various friends, including the two other co-defendants. (PSR ¶ 28.) Over January 13 and 14, 2020,

Dunigan and Davis were discussing money troubles over text when Dunigan messaged Davis, "I'm broke now I just re up I bought a quarter brick," followed by a picture of a large amount of a substance resembling heroin in a plastic bag. (PSR ¶¶ 29-30.) The next day, Dunigan was arrested and placed in custody. He immediately began taking steps to ensure that the drug conspiracy would continue in his absence. That same day, he spoke with another co-defendant who assured him that Davis was "on board" with the plan to continue selling drugs. (PSR ¶ 43.) Dunigan later spoke to Davis where they discussed an ongoing drug deal with the police informant. (PSR ¶ 45.)

At sentencing, the probation department assigned Davis an adjusted offense level of 23.[1] (Presentencing Investigation Report ("PSR") ¶ 102, ECF No. 155.) This score reflected the determination that she was responsible for a total converted drug weight of 631.25 kilograms. The vast majority of this weight came from the 250-gram "quarter brick" of heroin that Dunigan showed her in January 2020. (PSR ¶ 53.) Against her objections, the probation department further found that Davis had an "average" instead of "minor" role in the conspiracy. (PSR ¶ 56.) They based this determination on Davis's relationship to Dunigan and the conclusion that she took on a more significant role in the operation after Dunigan was imprisoned. (PSR, PageID.796.) The Court agreed that Davis was responsible for the quarter brick of heroin and that she was an "average" participant in the conspiracy. The Court sentenced Davis to 57 months in prison, at the low end of the 57-71-month guideline recommendation.

In June 2021, Davis appealed her sentence, first arguing that the Court erred in determining she had an average rather than minor role in the conspiracy. *See United States v. Edmonds*, Nos. 21-1564/1588, 2022 WL 3867560, at * 3 (6th Cir. Aug. 30, 2022). The Sixth Circuit disagreed,

---

[1] The PSR originally assigned her a total offense level of 21 due to the mistaken inclusion of a two-point "safety valve" reduction under USSG §5C1.2(a)(1)-(5). This was cleared up at the sentencing hearing. (*See* Sentencing Tr. 82, ECF No. 195.)

holding that the Court's finding that Davis was an average participant was supported by "the preponderance of the evidence," and that Davis's evidence to the contrary was insufficient to show that "the district court . . . clearly err[ed] when it declined to apply the minor-participant reduction" to Davis's offense level. *Id*. She also claimed that the Court erred by holding her responsible for the 250-gram quarter brick of heroin that Dunigan referenced in the January 2020 text messages. On this issue, the Sixth Circuit concluded that "it would have been reasonably foreseeable to Davis that Dunigan purchased the heroin so that it could be distributed by members of the conspiracy." *Id*. Finally, Davis asserted that the photograph of the quarter brick of heroin was not sufficient evidence to support a finding that the substance in the photo was actually heroin or that there were 250 grams of it. The Sixth Circuit again disagreed, finding that "the evidence support[ed] the conclusion that Dunigan actually possessed the contents in the photograph," and that, "the contents of the photograph were heroin." *Id*. at *4. As a result, Davis was unable to meet the clear error standard necessary to overturn the Court's sentencing determination, and the Sixth Circuit affirmed.

## II. LEGAL STANDARD

A prisoner may move to vacate her sentence under 28 U.S.C. § 2255 if she can demonstrate that the sentence was imposed in violation of the constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, "Section 2255 does not provide relief for just any alleged error." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). "A

§ 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995).

Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by showing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). "This standard is met only by 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (citing *Hill v. United States*, 369 U.S. 424, 428 (1962)). Thus, "a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations." *Id*. at 191.

One way a petitioner can demonstrate a constitutional error is by showing they received constitutionally inadequate representation. Under the *Strickland* standard for ineffective assistance of counsel, the movant must show two things. First, "that the attorney's performance fell below 'prevailing professional norms.'" *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). "And second, that the attorney's poor performance prejudiced the defendant's case." *Id*. Prejudice is a high bar to clear. *Id*. at 419. The petitioner must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). There are also "[n]o particular set of detailed rules" that courts can compare to counsel's conduct to determine whether their representation fell below a minimum standard. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Rather, courts must

"judge the reasonableness of counsel's challenged conduct on the facts of the particular case[.]" *Id.* at 690. However, where the attorney ignores or "disregards specific instructions from the defendant to file a notice of appeal," their conduct is presumptively professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

### III. ANALYSIS

Davis asserts two explicit grounds for relief. First, she argues that the Court erroneously held her responsible for excessive drug weight. According to Davis, the picture of heroin she received was unsolicited and unacknowledged and therefore it should not have been attributed to her for sentencing purposes. She also points out that the substance in the photo was never tested, weighed, or recovered by the police. (Def's Mot. Ex., ECF No. 225.) Next, she challenges the determination that she played an "average" role in the drug conspiracy. She argues that the evidence suggests she only played a minor role in the operation, especially in relation to her co-defendants, who were more heavily involved. (*Id.*) Finally, although she does not separately raise it as a ground to vacate her sentence, she apparently alleges that her appellate counsel, Geoffrey Upshaw, was ineffective for failing to either petition the Supreme Court for a writ of certiorari or explain to her that she had a right to do so. (Def's Mot. 10, ECF No. 224.) For the following reasons, Davis's motion to vacate her sentence will be denied.

### A. Davis may not relitigate issues already raised on appeal

Both of Davis's stated grounds for relief concern factual findings made by the Court during her sentencing which Davis subsequently challenged on direct appeal. It is settled law in this Circuit that issues raised and considered on appeal are seldom cognizable grounds for collateral attack in a subsequent § 2255 motion. *See Dupont v. United States*, 76 F.3d 108, 109 (6th Cir. 1996). In *Dupont*, the defendant argued in his appeal and later in a § 2255 motion that "the district court sentenced him to an excessive period of incarceration by overstating the quantity of cocaine

that could be deemed relevant conduct." *Id*. The Sixth Circuit held that "[b]ecause the claim asserted in Dupont's habeas corpus petition [was] substantively identical to one of the issues that [he] presented in his direct appeal following his conviction, and because no exceptional circumstances exist[ed] in th[e] action," the district court properly denied his §2255 motion. *Id*. at 111. In order for Davis to succeed in this action, she must, at a minimum, demonstrate that her claims are different from the ones she raised on direct appeal or that there are exceptional circumstances surrounding the Court's findings at sentencing. She does neither here.

### 1. Drug weight

Since her first objections to the PSR, Davis has maintained that she should not be held responsible for the "quarter brick" of heroin that represents the vast majority of the total drug weight used to calculate her recommended sentence. (*See* Def's Objs. to PSR 2.) At her sentencing hearing, Davis's counsel again challenged her responsibility for the "quarter brick" of heroin. (Sentencing Tr. 15-16, ECF No. 195.) And, on appeal, the "quarter brick" was one focus of Davis's argument that her sentence was excessive. (*See United States v. Davis*, No. 21-1588 (6th Cir.), Appellant Br. 18-20, ECF No. 9.)

On appeal, Davis argued that the total drug weight used to calculate her sentence "should not have exceeded two to three grams of heroin/fentanyl." (*Id*.) She asserted that she "never saw the 250 grams of alleged heroin/fentanyl in-person[,] and any other drugs were "under the control" of her codefendants, not her. (*Id*.) Therefore, she should not have been held responsible for those drugs. Instead, she admitted responsibility for the "few grams of heroin/fentanyl she received "after Dunigan was arrested," and the estimate of one gram she sold to the police informant. (*Id*.)

Here, Davis outlines the exact same arguments. She asserts that her sentence was excessive because, at most, she could only personally be linked to possessing "2 to 4.5" grams of heroin

because she never saw the "quarter brick," or had control over Dunigan's drug supply. (Def's Mot. Ex., PageID.1901)

The purpose of a § 2255 motion is either to vindicate constitutional rights or to provide a vehicle for a collateral attack to remedy "a fundamental defect which inherently results in a complete miscarriage of justice." *Bullard*, 937 F.3d at 658 (citing *Snider*, 908 F.3d at 189). Here, the arguments Davis brings against the Court's sentencing determinations do not rise to that level. She may disagree with the conclusion that she was responsible for the quarter brick of heroin, but there is enough evidence to support her culpability. She received a photo and a description of a large quantity of drugs from a known drug dealer for whom she sold drugs on many occasions. But, even if her claim were more compelling, the issue would be moot because Davis has already raised and litigated this issue on appeal. Further, she does not allege a change in law that might warrant further scrutiny. Nor does she present any "exceptional circumstances" or errors that "amount to something akin to denial of due process" which would allow the Court to reconsider this challenge to her sentencing. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). As a result, she does not have a cognizable claim for relief on this issue.

### 2. Minor role

Davis also argues that the court erred by declining to apply a "minor" role sentencing reduction to her total offense level. Davis raised this issue in her direct appeal. (*See* Sentencing Tr. 18-20); *United States v. Davis*, No. 21-1588 (6th Cir.), Appellant Br. 18-20.) Therefore, she must show that there are exceptional circumstances warranting reconsideration, which she does not do.

On appeal, Davis argued that she was entitled to a two-point minor role reduction in her total offense level because she "did not understand the scope and structure of the conspiracy[,]" she did not "participate in any planning or organizing related to distributions she made[,]" and "her

participation in the overall conspiracy [was] very limited." (*Davis*, Appellant Br. 17.) Here, the crux of her argument is the same. She states that she "did not participate in any planning or organizing related to the distribution of heroin/fentanyl[,]" and that evidence shows "her limited involvement" in the conspiracy was solely "made at the direction of others." (Def's Mot. Ex.)

Here, Davis does not assert any exceptional circumstances, she only presents arguments which have already been made. Further, those arguments amount to factual disagreements with the Court's sentencing determinations, which are not appropriate issues to bring in a § 2255 motion. *See Snider*, 908 F.3d at 189.

Davis also faces a separate hurdle on this issue because her sentence of 57 months would have fallen within the recommended guideline range even if she had received the two-point reduction for a minor role in the conspiracy. Davis's criminal history category of III, combined with her total offense level of 23, resulted in a recommended 57-71-month sentence. Had the two-point reduction for a minor role been applied, her recommended sentence would have been 46-57 months. In this Circuit, sentences within the applicable guideline range are "presumptively reasonable." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (citing *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008)). As a result, even if Davis could show that the Court erred by failing to grant her a minor role reduction, she cannot plausibly show that such an error amounts to a "fundamental defect which inherently results in a complete miscarriage of justice," since the Court could have reasonably sentenced her to 57 months in either scenario. *Davis v. United States*, 417 U.S. 333, 346 (1974); *see also Snider*, 908 F.3d at 191 (holding that the defendant did not raise a cognizable claim on a § 2255 motion where his sentence would have been within the applicable range whether he had been sentenced appropriately, or not).

**B. Davis does not raise a viable claim for ineffective assistance of counsel**

Davis does not specifically raise ineffective assistance of counsel ("IAC") as a ground for relief, but taking her motion as a whole, she does present an argument that her counsel was ineffective for failing to inform her of her right to continue her appeal to the Supreme Court once her direct appeal was denied. (*See* Def.'s Mot. 10.) It is well-settled that counsel has "a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. Here, Davis claims that Upshaw "did not recommend [she] file a motion with [the] Supreme Court" and that she "lacked the legal representation to know [her] rights," with respect to the potential to petition for a writ of certiorari. (Def.'s Mot. 10.) Since there is no duty to consult with a defendant about the potential for a discretionary appeal, Davis does not have a viable claim for ineffective assistance of counsel.

The Sixth Amendment guarantees "that at trial and on direct 'first tier' appeal every criminal defendant will have access to a lawyer to assist with his or her defense." *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005)). However, "the Constitution does not entitle a defendant to the effective assistance of counsel for a discretionary appeal (e.g., a petition for certiorari)." *Id.* And, "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). It is undisputed that, in this Circuit, defense counsel does not have a duty to represent their client past the "first tier" appeal. *Nichols*, 563 F.3d at 249-50. Upshaw therefore had no duty to petition the Supreme Court for a writ of certiorari on Davis's behalf. However, Davis appears to argue that Upshaw's performance was deficient because he failed to inform her of her right to appeal at all, a claim which has not been addressed by the Sixth Circuit.

While the Sixth Circuit has never ruled on this issue, other Circuits have, all concluding that the Sixth Amendment does not guarantee the right to be consulted about discretionary appeals once the "first tier" appeal has been denied.  In *Pena v. United States*, 534 F.3d 92 (2d Cir. 2008), the Second Circuit considered the same scenario and concluded that there was no duty for lawyers to inform criminal defendants of their right to petition the Supreme Court for certiorari.  *Id.* at 96. The court in *Pena* considered whether "the filing of such a petition should be considered the last step in [the] first appeal as of right – not the first step of the subsequent discretionary appeal," ultimately concluding such an argument was, "ingenious but wrong."   *Id.* (citing *Chalk v. Kuhlmann*, 311 F.3d 525, 529 (2d Cir. 2002)).

In *Folkes v. Nelsen*, 34 F.4th 258 (4th Cir. 2022), the Fourth Circuit addressed the same argument and reached the same conclusion.  *Id.* at 282.  The court in *Folkes* conducted an exhaustive review of similar cases and found that "all other courts of appeals to consider such claims have held that because the Constitution does not guarantee a right to effective assistance of counsel relating to a discretionary appeal, IAC claims are not cognizable based on appellate counsel's mistaken advice or failure to advise about an unsuccessful appellant's opportunities for subsequent discretionary relief."  *Id.*

In the absence of authority to the contrary, it is reasonable to conclude that the Sixth Circuit would reach the same determination.  The dissent in *Folkes* does point out that the Sixth Circuit is something of an outlier on certain, related issues, however.  *Id.* at 298 (Wynn, J., dissenting). Unlike sister circuits, the Sixth Circuit has found that the Constitution requires counsel to continue representation after the decision in a direct appeal in limited cases.  For example, this Circuit recognized a constitutional duty for counsel to "notify a defendant of the outcome of his direct appeal."  *Smith v. Ohio Dep't of Rehab & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006).  In *Gunner v.*

*Welch*, 749 F.3d 511 (6th Cir. 2014), the Sixth Circuit also concluded that direct appellate counsel's deficient performance for failing to inform his client of an upcoming deadline for filing for state post-conviction relief could serve as the basis for an IAC claim. *Id*. at 520. However, those cases concern state court proceedings and state court processes. No court in this Circuit has relied on *Smith* or *Gunner* to impose a duty on appellate counsel to inform their clients of their right to petition the Supreme Court for a writ of certiorari. Given that every other Circuit to consider the issue has held that there is no such right, the Court finds that Davis cannot use her counsel's failure to inform her of the possibility of a discretionary appeal to the Supreme Court as a basis for a *Strickland* claim.

## IV. CONCLUSION

For the reasons stated above, Davis's § 2255 motion will be denied. The Court will enter an order consistent with this Opinion.

Dated: December 13, 2023                    /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE